

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

IN RE: )
                         )

DARRYL SMITH , )       Case No.: 15-12507-JDW
                         )

DEBTOR. )       Chapter 13

## MEMORANDUM OPINION AND ORDER OVERRULING
## TRUSTEE'S OBJECTION TO CONFIRMATION (DKT. # 18)

This matter came before the Court for hearing on October 6, 2015, on the Objection to Confirmation of Chapter 13 Plan (the "Objection") (Dkt. # 18) filed by the chapter 13 trustee, Locke D. Barkley (the "Trustee") and the response thereto (the "Response") (Dkt. # 21) filed by Darryl Smith (the "Debtor").  At the hearing on the Objection, Adam Sanford, counsel for the Trustee, and Robert Gambrell, counsel for the Debtor, appeared and requested an opportunity to brief the legal issues, as the facts are not in dispute.  Accordingly, an order setting a briefing schedule was entered on November 5, 2015 (Dkt. # 23).

The Trustee filed her brief on December 3, 2015 (Dkt. # 25), and the Debtor filed his brief in opposition on December 31, 2015 (Dkt. # 26).  The issues presented in the Objection have been fully briefed and are now properly before the Court for resolution.

The Trustee objects to confirmation under 11 U.S.C. § 1325(b)(1)(B),[1] alleging that the chapter 13 plan does not provide for payment of all of the Debtor's projected disposable income for distribution to unsecured creditors over the life of the plan.  This case turns on the appropriate measure for "projected disposable income" when the means test yields a figure that is different from Schedules I and J.  For the reasons set forth below, the Court finds that the means test is the appropriate measure for projected disposable income absent evidence of a known or virtually certain change in the debtor's disposable income as defined by the Bankruptcy Code.  Accordingly, the Trustee's Objection is overruled.

## I.   <u>**JURISDICTION**</u>

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc

---

[1] Unless otherwise noted, all statutory citations are to Title 11, United States Code (the "Bankruptcy Code").

Pro Tunc dated August 6, 1984.  This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. §§ 157(b)(2)(A) and (L).

## II.   <u>FINDINGS OF FACT</u>[2]

The following facts are undisputed by the parties.  On July 16, 2015, the Debtor filed a chapter 13 bankruptcy petition (Dkt. # 1).  On July 29, 2015, the Debtor filed his bankruptcy schedules (Dkt. # 7), as well as Official Forms 22C-1 and 22C-2 (Dkt. # 9)(collectively, "Form 22C").  The Debtor is an "above-median income debtor" since his annualized income exceeds the applicable median income for his respective household size (Dkt. # 9).  The Debtor also filed a chapter 13 plan on July 29, 2015 (Dkt. # 8), which was subsequently amended on August 23, 2015 (the "First Amended Plan") (Dkt. # 14).

After subtracting the total of allowed deductions from the current monthly income figure as reported on Form 22C, the Debtor was left with a monthly "disposable income" figure of negative $1,177.23 (Dkt. # 9).  Schedules I and J yield different figures.  After deducting the monthly expenses from the "combined monthly income" as required by Schedules I and J, the Debtor was left with a positive "monthly net income" figure of $402.18.

---

[2] To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

The Debtor asserts that the plain language of § 1325(b) provides a clear and specific formula for determining "disposable income" and requires the Debtor to pay the projected amount of such disposable income to unsecured creditors. Since the calculation of projected disposable income is negative, the Debtor proposed to pay nothing to unsecured creditors in the First Amended Plan (Dkt. # 14). The Trustee objected to confirmation of the Debtor's First Amended Plan under § 1325(b) on the ground that it failed to provide all of the Debtor's projected disposable income for payment to unsecured creditors (Dkt. # 18).

There is no allegation by either party that any figures are inaccurate or improperly listed on the respective filings. Instead, the Trustee asserts that once it is determined that the means test is not representative of the current income and expenses, the Court must look beyond the means test to take into account known or virtually certain information about future income and expenses. The Trustee argues that in this case, "projected disposable income" should be determined by the actual income and expenses as reported in Schedules I and J because these schedules reflect an accurate and fair representation of the Debtor's financial condition. Accordingly, the Trustee contends the Debtor should pay $402.18 per month for distribution to unsecured creditors based on the figures in Schedules I and J, while the Debtor contends that there are no funds available for unsecured creditors

4

based on the means test as reflected in Form 22C. Therefore, the Court must

determine the appropriate method for calculating "projected disposable

income" when the "disposable income" figure on Form 22C is different from

the "monthly net income" figure on Schedule J.

## III.   CONCLUSIONS OF LAW

### A. Definition of Disposable Income

Section 1325(b) provides that a court may not approve a debtor's plan

over the objection of a trustee or an unsecured creditor unless the debtor

provides for either full payment to unsecured creditors or payment of all of

his "projected disposable income" over the life of the plan.   *See Hamilton v.*

*Lanning,* 560 U.S. 505, 509 (2010).   As the United States Supreme Court

noted in *Lanning*, while the Bankruptcy Code does not define "projected

disposable income," the calculation for "disposable income" is described in

detail:

> "Disposable income" is now defined as "currently monthly income
> received by the debtor" less "amounts reasonably necessary to be
> expended" for the debtor's maintenance and support, for
> qualifying charitable contributions, and for business
> expenditures.  "Currently monthly income," in turn, is calculated
> by averaging the debtor's monthly income during what the
> parties refer to as the 6-month look-back period, which generally
> consists of the six full months preceding the filing of the
> bankruptcy petition.

*Id.* at 510 (citations omitted).   For an above-median income debtor, like the

Debtor here, the "amounts reasonably necessary to be expended" only

includes the expenses specified in § 707(b)(2). *See id.* Section 707(b)(2) provides a statutory formula to calculate "disposable income," which is commonly referred to as the "means test" and reflected in Form 22C. *See id.* at 510, n.2. Congress adopted the means test as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") "to help ensure that debtors who *can* pay creditors *do* pay them." *See Ransom v. FIA Card Serv., N.A.,* 562 U.S. 61, 64 (2011) (emphasis in original).

"Under the means test, a debtor calculating his "reasonably necessary" expenses is directed to claim allowances for defined living expenses, as well as for secured and priority debt." *Ransom,* 562 U.S. at 65 (citing §§ 707(b)(2)(A)(ii)-(iv)). More particularly, § 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides[.]

### B. Supreme Court's Interpretations of Projected Disposable Income

As previously noted, the term "projected disposable income" is not defined in either the current version or the pre-BAPCPA version of the Bankruptcy Code. *See Lanning,* 560 U.S. at 509-10. It is well-known that pre-BAPCPA, projected disposable income was calculated using the income and expense figures in Schedules I and J, respectively. However, for an

6

above-median income debtor, the means test "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom,* 562 U.S. at 65.

In *Lanning,* the debtor received a one-time buyout from her employer which "greatly inflated" the projected disposable income figure based on the means test calculation. *Id.* at 511. In adopting a "forward-looking" approach for calculating projected disposable income, the Supreme Court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for *changes* in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524 (emphasis added). The one-time buyout received by the debtor within the six-month period before filing the bankruptcy petition was a known change in income that impacted the means test results. The Supreme Court made clear that even under a forward-looking approach, the starting point in calculating projected disposable income under BAPCPA is the means test, i.e., Form 22C. *Id.* at 519.

In rejecting rigid adherence to a mechanical approach in all cases, the Supreme Court recognized that BAPCPA did not erode the pre-BAPCPA discretion held by the courts to account for known or virtually certain changes when projecting a debtor's disposable income. *Id.* at 515-17.

7

However, the Supreme Court also emphasized "the important role that the statutory formula for calculating "disposable income" plays under the forward-looking approach," stating that a court "should begin by calculating disposable income, and in most cases, nothing more is required." *Id.* at 519. "It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.* Therefore, *Lanning* made clear that the means test "is not only the starting point in calculating projected disposable income, but in most cases, it is determinative." *In re Cramer,* 697 F.3d 1314, 1318 (10th Cir. 2012). The court may exercise its discretion to deviate from the statutory formula, but only when a change in the debtor's financial condition is known or virtually certain. *Lanning,* 560 U.S. at 519. It is clear that a material change is required before a court may go beyond the means test.

"While *Lanning* dealt with the income side of the definition of projected disposable income, just a few months later, the Supreme Court also considered the expense side of the equation." *In re White,* 512 B.R. 822, 829 (Bankr. N.D. Miss. 2014) (citing *Ransom,* 562 U.S. at 61). The debtor in *Ransom* deducted the standard allowance for vehicle loan or lease payments even though he owned his vehicle free and clear from any debt or obligation. 562 U.S. at 71. The Supreme Court noted that there is a "threshold determination of eligibility" in that "a debtor should be required to qualify for

8

a deduction by actually incurring an expense in the relevant category." *Id.* at 70. Accordingly, the Supreme Court held that a debtor who does not make vehicle loan or lease payments may not claim a standard deduction in that category. *Id.* at 80.

Noting that that language in § 707(b)(2)(A)(ii)(I) was central to its decision, the Supreme Court discussed the distinction between the "applicable" monthly expenses specified in the standard allowances (the "Standards") and the "actual" monthly expenses" for *Other Necessary Expenses*:

> Although the expense amounts in the Standards apply only if the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction.  If a debtor's actual expenses exceed the amounts listed in the [Standards], for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures.  For the Other Necessary Expense categories, by contrast, the debtor may deduct his actual expenses, no matter how high they are.  Our reading of the means test thus gives full effect to the "the distinction between 'applicable' and 'actual' without taking a further step to conclude that 'applicable' means 'nonexistent.'"

*Id.* at 75-76.

The language in *Ransom* indicates that the Standards operate as a cap on the amount a debtor may claim for "applicable monthly expenses." *Id.* at 75. The Supreme Court declined to resolve the question of whether a debtor may claim the full amount of the Standards when his actual expenses are lower than the Standards. *Id.* at 75, n.8.

Both *Lanning* and *Ransom* illustrate the Court's preference of utilizing a reality-based approach in calculating a chapter 13 debtor's projected disposable income.  The Supreme Court did not, however, reject the formulaic approach altogether.  To the contrary, both cases reflect the Supreme Court's position that the means test formula is the starting point for determining projected disposable income.  Something out of the ordinary is required for a court to exercise its discretion to deviate from the statutorily-defined disposable income figure, even when the results of the means test do not line up exactly with a debtor's current financial information.  "Such formulas are by their nature over- and under-inclusive."  *Ransom,* 562 U.S. at 78.  "In eliminating the pre-BAPCPA case-by-case adjudication of above median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces."  *Id.*

## C. Fifth Circuit's Interpretation of Projected Disposable Income

The United States Court of Appeals for the Fifth Circuit has interpreted the phrase "projected disposable income" in both pre- and post-*Lanning* decisions.  In *In re Nowlin,* the debtor's plan failed to account for an increase in income due to occur when the debtor's 401(k) loan paid off during the term of the plan.  576 F.3d 258 (5th Cir. 2009).  The Fifth Circuit held that "a debtor's 'disposable income' calculated under § 1325(b)(2) . . . is

10

presumptively the debtor's 'projected disposable income' under § 1325(b)(1)(B)," but that a court may consider "reasonably certain future events that *substantially change* the debtor's financial situation."   576 F.3d 258, 266 (emphasis added).   The Supreme Court confirmed this forward-looking approach to calculating projected disposable income in *Lanning*.

In *In re Ragos,* the Fifth Circuit considered whether social security benefits are included in projected disposable income.   700 F.3d 220 (5th Cir. 2012).   While these benefits may be reflected in the debtor's schedules as income, they are explicitly excluded under the statutorily-defined disposable income figure.   In holding that social security benefits are not included in projected disposable income, the Fifth Circuit reemphasized its position in *Nowlin* that absent evidence of a *substantial change* in the debtor's financial situation, "disposable income is the equivalent to projected disposable income."   700 F.3d at 225.   The existence of social security benefits is not evidence of a substantial change, however, and certainly distinguishable from the situation in *Lanning* where the debtor's future income was "virtually certain" to be different from her current income.   *Id.   Ragos* suggests that evidence of a substantial change requires more than pointing out inconsistencies between figures in the schedules and the means test.   There must be a known or virtually certain "material change" that indicates

disposable income is not a reliable predictor of projected disposable income. *See id.*

*Ragos* also highlights a significant issue with wholesale reliance on Schedules I and J when the figures in those schedules differ from those on the means test. As was the case in *Ragos*, a debtor's schedules may contain income or expenses, such as social security benefits, that Congress specifically excluded from the statutorily-defined calculation of disposable income.

### D. This Court's Reality-Based Review of the Means Test

This Court considered the means test in the context of a chapter 7 case in *White,* 512 B.R. 822. In *White*, the Court examined a post-petition decrease in debt payments that had occurred, or was certain to occur, when the debtor surrendered collateral securing pre-petition debts. 512 B.R. at 823. Relying, in part, on *Ransom,* this Court reasoned that "if a debtor cannot claim a standard deduction for an expense he does not have, likewise, then, a debtor cannot claim a deduction for actual, specific payments that will not be made." *Id.* at 830. Accordingly, this Court concluded that the means test "allows for deduction of payments to creditors only if those payments are to actually be made." *Id.* at 823.

The interpretations provided in the cases discussed above establish the following principles: (1) the starting point for calculating projected disposable

income is disposable income as defined by the Bankruptcy Code (i.e., the means test); (2) a court may take into account known or virtually certain changes in income or expenses; (3) a debtor who does not incur any expense in a particular category may not deduct an allowance for that expense; and (4) a debtor may not claim a deduction for payments on a debt unless he intends to actually make the payments.

### E. Other Judicial Interpretations of Projected Disposable Income

Varying interpretations of "projected disposable income" still remain among bankruptcy courts when, as here, the income and expense figures on the means test differ from those on Schedules I and J.  Seemingly because "current monthly income" is clearly defined in the Bankruptcy Code, the division among courts lies mostly in the allowance of expenses.

Some courts continue to use the debtor's actual income and/or expenses in calculating projected disposable income.  *In re Edmunds,* 350 B.R. 636, 649 (Bankr. D.S.C. 2006) (finding that § 1325 allows a court to consider actual income and expenses in Schedules I and J); *In re Harris,* 522 B.R. 804, 807 (Bankr. E.D.N.C. 2014) (holding that the an above-median income debtor may only deduct the lesser of the actual expense or the Standards); *In re Daniel*, 2012 WL 3322438 at *2 (Bankr. M.D. Ala. 2012) (concluding that the trustee rebutted the presumption that debtors were entitled to claim the full

amount of the standard expense allowance with evidence that the actual expense was less).

Other courts view the application of the means test for the above-median debtor as mandatory absent evidence of a change in the debtor's financial condition. *In re Early,* 523 B.R. 804, 811 (Bankr. S.D. Ill. 2014) (holding that a court may not confirm a plan that deviates from the means test simply because the debtor's actual expenses as reflected in Schedules I and J are higher than the Standards); *In re O'Neill Miranda,* 449 B.R. 182, 196 (Bankr. D.P.R. 2011) (holding that debtors may deduct the full amount of the Standards if they incur an expense for that particular category, even if their actual expenses are lower); *In re Thiel,* 446 B.R. 434, 439 (Bankr. D. Idaho 2011) (rejecting the contention that the means test should be used only if it is consistent with Schedules I and J); *In re Scott,* 457 B.R. 740, 748 (Bankr. S.D. Ill. 2011) (concluding that absent evidence of a change in the debtor's financial situation that would warrant deviation from the means test, *Lanning* has no bearing); *In re Melvin,* 411 B.R. 715, 728 (Bankr. D. Kan. 2008) (holding that the "change" required for a court to deviate from the means test is a change in circumstances from those which were the basis for the means test figures); *In re May,* 381 B.R. 498, 509 (Bankr. W.D. Pa. 2008) (holding that the means test "is presumed to be an accurate reflection of a debtor's 'projected disposable income'").

14

This Court agrees with the Trustee that Schedules I and J may provide a more realistic representation of a debtor's current income and expenses. It is not of the opinion, however, that a court may reject the means test simply because its figures are different from those in Schedules I and J. That is not the framework that has been developed by the Bankruptcy Code, nor binding precedent. Congress mandated the method for calculating disposable income in § 1325, and Schedules I and J are no longer the basis for that method. "Current monthly income" is clearly defined in § 101(10A), and "Congress intended the means test to *approximate* the debtor's reasonable expenditures on essential items[.]" *Ransom,* 562 U.S. at 70 (emphasis added).

*Lanning* "did not sacrifice the means test in favor of schedules I and J in every case, or validate a reversion to pre-BAPCPA practice." *Thiel,* 446 B.R. at 439. "Indeed, if in order to look beyond [the means test] all that was required was a showing that a debtor's actual expenses varied from the standard expenses allowed under the means test, deviation from [the means test] would be the rule, not the exception." *Id.*

In *Ransom,* the Supreme Court recognized that standardized formulas like the means test "are by their nature over- and under-inclusive." 562 at 78. The chart on page 4 of the Trustee's brief illustrates this point (*See* Dkt. # 25). While the Debtor's means test income figure is $566.66 higher than the schedules, his means test insurance expense is $478.50 lower than the

schedules. *See id.* However, "[i]n eliminating the pre-BAPCPA case-by-case adjudication of above median-income debtors' expenses . . . Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Ransom,* 562 U.S. at 70.

The Court holds that it may not, as a general rule, revert to the pre-BAPCPA practice of calculating a debtor's projected disposable income based on figures in Schedules I and J.  Such a rule would ignore the mandate in § 1325(b)(3) that reasonable expenses "*shall* be determined in accordance with . . . § 707(b)(2)" and render the definition of disposable income superfluous.  § 1325(b) (emphasis added).

The Debtor's First Amended Plan proposes to pay nothing to unsecured creditors based on the negative projected disposable income figure on Form 22C.  The Trustee has not challenged any figures reported by the Debtor in the means test as reflected on Form 22C.  Further, the Trustee has not alleged, nor provided any evidence of, a "known or virtually certain change in the Debtor's income or expenses" to suggest that this is the "unusual case" that requires the Court to look beyond the means test in calculating projected disposable income.  Therefore, the Court may not use its discretion to deviate from the projected disposable income figure as calculated by the Debtor under the means test.   Accordingly, the Court must overrule the Trustee's Objection.

## IV.   <u>CONCLUSION</u>

Consistent with the mandates of the Bankruptcy Code, as well as the principles set forth in *Lanning, Nowlin and Ragos,* the Court finds and concludes that disposable income as reflected in Form 22C is presumptively the Debtor's projected disposable income.  In order to rebut this presumption, the Trustee must prove a known or virtually certain *change* in the debtor's financial condition that indicates disposable income as reflected in the means test is not a reliable predictor of projected disposable income.  The fact that the schedules reflect numbers that are *different* is not, in and of itself, enough.  *Lanning,* 560 U.S. at 519; *Nowlin,* 576 F.3d at 266; *Ragos,* 700 F.3d at 225.  Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the Trustee's Objection to Confirmation (Dkt. # 18) is **OVERRULED.**

## END OF ORDER ##